UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **TIFFANY SUTTON, o/b/o S.J.M.** | * | **CIVIL ACTION NO. 14-2393** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner of Social Security's denial of disability insurance benefits. The appeal was referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### Background

On June 5, 2012, Tiffany Sutton protectively filed the instant application for Supplemental Security Income (SSI) benefits on behalf of her minor child, S.J.M. (claimant),[1] who was born in August 2003. (Tr. 149-154, 168).[2] Sutton alleged in her application that S.J.M. had been disabled since May 1, 2012, because of ADHD and bipolar disorder. (Tr. 172). The

---

[1] The court refers to the minor by his initials in accordance with LR 5.82W and the E-Government Act of 2002.

[2] Sutton filed a prior SSI application on September 9, 2010, that was denied on May 9, 2011, by an Administrative Law Judge. (Tr. 87, 70-84).

claim was denied at the initial stage of the administrative process. (Tr. 85-99). Thereafter, Sutton requested, and received a December 19, 2012, hearing before an Administrative Law Judge ("ALJ"). (Tr. 27-55). By decision dated May 14, 2013, however, the ALJ determined that the claimant was not disabled under the Act. (Tr. 9-23).

Plaintiff appealed the adverse decision to the Appeals Council. On June 3, 2014, however, the Appeals Council denied the request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On July 29, 2014, Sutton sought review before this court. She alleges the following errors:

1) the ALJ's reasons for finding that S.J.M.'s ADHD does not meet the requirements of Listing 112.11 are not supported by substantial evidence;

2) the ALJ's finding that S.J.M. has "less than marked" limitations in the domains of acquiring and using information and attending and completing tasks is not supported by substantial evidence;

3) the Appeals Council erred by failing to remand the matter to the ALJ for consideration of newly submitted evidence; and

4) the ALJ's credibility determination is not supported by substantial evidence.

**Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards.

*Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, it contemplates "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## Law

On August 22, 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub.L. 104-193, 110 Stat. 2105, which amended 42 U.S.C. §1382c(a)(3). Pursuant to this law, a child under the age of eighteen is considered disabled for purposes of SSI benefits if "that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I) (1997).

The regulations set forth a three-step sequential evaluation process for a child seeking benefits. First, the ALJ must determine if the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924. If the child is not so engaged, then the ALJ determines whether the child has a medically determinable impairment(s) that is severe. *Id*. An impairment(s) will not be deemed

severe if it constitutes a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." *Id.* Finally, an impairment(s) that is severe also must meet, medically equal, or functionally equal a listed impairment. *Id.*

The Listing of Impairments describes impairments for each major body system that cause marked and severe functional limitations. 20 C.F.R. § 416.925(a). An impairment(s) meets a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement. 20 C.F.R. § 416.925(c)(3).

If an impairment(s) does not meet all of the criteria of a listing, it still can medically equal the criteria of a listing when the claimant has other findings related to the impairment(s) that are at least of equal medical significance to the required criteria. *See* 20 C.F.R. §§ 416.925(c)(5) & 926(b). Medical equivalence may be appropriate in circumstances where the claimant: 1) has an impairment described in the Listing of Impairments, but a) does not exhibit one or more of the findings of the specified listing, or b) exhibits all of the findings, but one or more of the findings is not as severe as specified by the listing; 2) has an impairment(s) that is not described in the Listing of Impairments; or 3) has a combination of impairments none of which meets a listing in the Listing of Impairments. 20 C.F.R. § 416.926(b).

If the claimant has a severe impairment(s) that does not meet or medically equal any listing, the Commissioner will decide whether it causes limitations that functionally equal a listing(s). 20 C.F.R. § 416.926a(a). Under the regulations, the Commissioner considers the claimant's functional activities in terms of six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. 20 C.F.R. §

416.926a(b)(1).  An impairment is deemed functionally equivalent to a listed impairment if it results in an extreme limitation in one domain of functioning or marked limitations in two domains.  20 C.F.R. § 416.926a(a).  When assessing functional limitations, the Commissioner considers all relevant factors including, but not limited to:

> 1) How well [the claimant] can initiate and sustain activities, how much extra help [the claimant] need[s], and the effects of structured or supportive settings;
>
> 2) How [the claimant] function[s] in school; and
>
> 3) The effects of [the claimant's] medications or other treatment.

20 C.F.R. § 416.926a(a) (internal citations omitted).

An "extreme" limitation is assessed when the impairment(s) interferes very seriously with the claimant's ability to independently initiate, sustain, or complete activities.  20 C.F.R. §416.926a(e)(3).  Day-to-day functioning may be seriously limited when the impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities.  *Id*.  An "extreme" limitation is equivalent to standardized test scores that are at least three standard deviations below the mean.  *Id*.  "Extreme" limitation, however, does not necessarily mean a complete lack or loss of ability to function.  *Id*.

The term "marked" may be established when a claimant's impairments seriously interfere with the claimant's ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(2). "Marked" limitation also refers to a limitation that is more than "moderate," but "less than extreme."  *Id*.  A "marked" limitation is equivalent to standardized test scores that are at least two, but less than three standard deviations below the mean.  *Id*.

## Discussion

The ALJ determined that S.J.M. did not engage in substantial gainful activity during the

relevant period. (Tr. 15). She further found that S.J.M. suffers from the severe impairment of Attention Deficit Hyperactivity Disorder ("ADHD"). *Id*. The ALJ concluded, however, that the impairment neither met nor medically equaled a listed impairment. (Tr. 15-16). Accordingly, she proceeded to consider whether S.J.M.'s impairment functionally equaled a listed impairment.

In so doing, the ALJ determined that S.J.M. suffered a *marked* limitation of functioning in the domain of interacting and relating to others, and a *less than marked* limitation in the domains of acquiring and using information, attending and completing tasks, and caring for oneself. (Tr. 16-23). She further found that the claimant had *no* limitations of functioning in the two remaining domains. *Id*. Because the claimant did not have at least two "marked" limitations or one "extreme" limitation of functioning, the ALJ concluded that S.J.M. did not have an impairment that functionally equaled any of the impairments listed in Appendix 1, Subpart P, of Regulation No. 4. *Id*.

**Assignment of Error No. 1**

Plaintiff contends that the record evidence warrants a finding that S.J.M.'s ADHD meets Listing 112.11, and therefore, the ALJ's contrary finding is erroneous. The relevant listing provides, as follows,

> 112.11 Attention Deficit Hyperactivity Disorder:  Manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>
> A. Medically documented findings of all three of the following:
> 1. Marked inattention; and
> 2. Marked impulsiveness; and
> 3. Marked hyperactivity;

    AND

    B. For older infants and toddlers (age 1 to attainment of age 3), resulting in at least one of the appropriate age-group criteria in paragraph B1 of 112.02; or, for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

20 C.F.R. Pt. 404, Subpt. P, App. 1., Rule 112.11.

                \*                \*                \*

    112.02(B)(2). For children (age 3 to attainment of age 18), resulting in at least two of the following:

    a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

    b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

    c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

    d. Marked difficulties in maintaining concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1., Rule 112.02(B)(2).

To establish that a claimant's injuries meet or medically equal a listing, the claimant must provide medical findings that support all of the criteria for a listed impairment (or most similarly listed impairment). *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990). If the plaintiff fails to

demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that listings-level impairments are not present. *Selders, supra*.

The ALJ determined that S.J.M. did not meet listing 112.11 because he did not satisfy the paragraph A criteria. (Tr. 15-16). According to the regulations, however, the purpose of the paragraph A criteria is to "substantiate medically the presence of a particular disorder." 20 C.F.R. Pt. 404, Subpt. P, App. 1., Rule 112.00(A). Therefore, the rationale for the ALJ's "step three" decision is in tension with her earlier "step two" finding that S.J.M. suffers from ADHD. Any error, however, is harmless because, via her functional equivalency analysis, the ALJ also effectively found that S.J.M. did not meet the paragraph B criteria, i.e. he did not suffer marked impairments in at least two areas of functioning.[3] Furthermore, that determination is supported by substantial evidence. *See* discussion, *infra*.

Plaintiff also argues that, even if S.J.M. did not meet listing 112.11, then the ALJ erred by failing to obtain an updated opinion from a medical expert to determine whether S.J.M.'s impairment medically equaled a listing. Indeed, "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight."[4] Furthermore, "[w]hen an

---

[3] Plaintiff agrees that paragraph B's areas of functioning equate to corresponding functional domains. *See* Pl. Brief, pg. 21.

[4] TITLES II AND XVI: CONSIDERATION OF ADMINISTRATIVE FINDINGS OF FACT BY STATE AGENCY MEDICAL AND PSYCHOLOGICAL CONSULTANTS AND OTHER PROGRAM PHYSICIANS AND PSYCHOLOGISTS AT THE ADMINISTRATIVE LAW JUDGE AND APPEALS COUNCIL LEVELS OF ADMINISTRATIVE REVIEW; MEDICAL EQUIVALENCE (SSR 96-6P); *see also* Hearings, Appeals and Litigation Law Manual ("HALLEX") I-5-4-30. Although social security rulings are not binding

administrative law judge or the Appeals Council finds that an individual s impairment(s) is not equivalent in severity to any listing, the requirement to receive expert opinion evidence into the record may be satisfied by any of the . . . documents signed by a State agency medical or psychological consultant." SSR 96-6P.

Here, the record contains a July 19, 2012, assessment by non-examining agency psychologist, Tom Ray, Ph.D., in which he opined that S.J.M.'s impairment did not meet, medically equal, or functionally equal a listing. (Tr. 89, 266). This assessment satisfies SSR 96-6P's initial requirement.

Nevertheless,

> an administrative law judge and the Appeals Council must obtain an updated medical opinion from a medical expert in the following circumstances:
>
> * When no additional medical evidence is received, but **in the opinion of** the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> * When additional medical evidence is received that **in the opinion of** the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

SSR 96-6p (emphasis added).

Plaintiff contends that because additional school and medical records were entered into the record and considered by the ALJ, the ALJ was obliged to obtain an updated opinion

---

on the federal courts, *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001), they are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1).

regarding medical equivalency. However, an ALJ is only required to obtain an updated medical opinion when she is *of the opinion* that the new evidence might have changed the psychological consultant's finding on medical equivalence. (SSR 96-6p).

Here, there is no evidence that the ALJ believed that the new evidence might have changed the psychological consultant's finding. Moreover, plaintiff fails to demonstrate how S.J.M.'s ADHD is medically equivalent to a listing.[5] The court observes that the ALJ determined that the claimant did not suffer from any other impairment. Moreover, there are no other findings that would substitute for the requisite marked limitations of functioning in at least two areas. *See* 20 C.F.R. § 416.926(b)(1)-(3) and *Selders, supra*.

**Assignment of Error Nos. 2 & 3**

Plaintiff contends that the record lacks substantial evidence to support the ALJ's finding that S.J.M. had "less than marked" limitations of functioning in the domains of "acquiring and using information" and/or "attending and completing tasks." The court addresses each domain, in turn.

    1)    <u>Acquiring and Using Information</u>

The regulations provide that for purposes of this domain, school-age children

> should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use

---

[5] Again, it is plaintiff's burden to "provide medical findings that support each of the criteria for the equivalent impairment determination." *Selders, supra* (citation omitted).

>   increasingly complex language (vocabulary and grammar) to share information
>   and ideas with individuals or groups, by asking questions and expressing your
>   own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. § 416.926a(g)(2)(iv).

The regulations also provide examples of limitations in this domain which do not necessarily rise to the level of a "marked" or "extreme" limitation:

>   (I) You do not demonstrate understanding of words about space, size, or time; e.g., in/under, big/little, morning/night.
>
>   (ii) You cannot rhyme words or the sounds in words.
>
>   (iii) You have difficulty recalling important things you learned in school yesterday.
>
>   (iv) You have difficulty solving mathematics questions or computing arithmetic answers.
>
>   (v) You talk only in short, simple sentences and have difficulty explaining what you mean.

20 C.F.R. § 416.926a(g)(3).

In support of her finding that S.J.M. had a less than marked limitation of functioning in this domain, the ALJ noted, *inter alia*, that the claimant's school marks were good, that the only grade he failed was first grade, that his teacher, Ms. Kayce Waller, documented no limitation in his ability to understand and participate in class discussions, and that he did better while on medication. (Tr. 17-18).

Plaintiff faults the ALJ for observing that S.J.M. functioned better on medication because Ms. Waller made this remark in the context of the domain of interacting and relating to others. *See* Tr. 215. However, Ms. Waller further stated at the end of her questionnaire (not in response to any particular domain) that "[w]hen [S.J.M.] is *not* on his medication he is very active and can't pay attention. He has a very hard time focusing on his work. He becomes distracted easily and frustrated." (Tr. 217) (emphasis added). In other words, when S.J.M. *does* take his

11

medication, he *is* able to maintain attention and stay focused, which undoubtedly helps with the learning process. In addition, Ms. Waller confirmed that S.J.M. took his medication on a regular basis. *Id*.

Plaintiff also takes issue with the ALJ's failure to sufficiently recognize that Ms. Waller rated S.J.M. as having obvious or serious problems in seven (out of ten) categories in the acquiring and using information portion of the teacher questionnaire. (Tr. 213). However, there is no formula for converting the teacher questionnaire ratings into domain ratings. (Program Operations Manual System ("POMS") DI 25205.030(5)). Similarly, the teacher's responses cannot be added up or otherwise mechanically converted into functional limitations. *Id*. Although the questionnaire provides extremely useful information about the claimant's day-to-day functioning, it must be considered in conjunction with other record evidence. *Id*.

Here, when the questionnaire is considered together with S.J.M.'s grades for the period at issue, it is manifest that S.J.M. has a deficiency in the domain of acquiring and using information, but that the degree of functional loss is less than marked. For instance, for the first two grading periods in the 2012-2013 school year, S.J.M. received two Bs in social studies, a D and a C in math, a D and a C in science, a C and an A in spelling, a B and a C in language arts, a B and a C in reading, and two A's in conduct. (Tr. 202). In addition, S.J.M.'s third grade teacher confirmed that as of February 2013, S.J.M. was functioning at the third grade level in reading, math, and written language. (Tr. 212).

Plaintiff contends that the Appeals Council erred by failing to remand the matter to the ALJ for consideration of newly submitted evidence consisting of iLEAP test results from Spring 2013 indicating that S.J.M.'s achievement levels were "unsatisfactory" in English language arts,

mathematics, science, and social studies. (Tr. 323-324).[6] The regulations, however, do not require the Appeals Council to discuss newly submitted evidence or to provide reasons for denying review. *Sun v. Colvin*, __ F.3d ___, 2015 WL 4393795 (5th Cir. July 17, 2015). Citing a Fourth Circuit decision, the Fifth Circuit recently held that when "significant" new evidence, (i.e., when it arguably undermines the stated rationale for the ALJ's decision) is presented to the Appeals Council, then the courts must be reverse and remand the matter to the Commissioner to consider and weigh the effect of the evidence. *Sun, supra* (citing *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011).

Under the regulations, however, the Appeals Council is obliged to consider additional evidence only when it is new, material, and related to the period on, or before the date of the ALJ's decision. *Meyer, supra* and 20 C.F.R. § 404.970(b). Evidence is considered "new" "if it is not duplicative or cumulative" and "material" if there is "a reasonable possibility that [it] would have changed the outcome." *Meyer, supra* (citing *Wilkins v. Sec'y, Dept. of Health Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991) (*en banc*)). Consequently, evidence submitted by a claimant to the Appeals Council does not per se require remand to the Commissioner merely because the Appeals Council did not address the evidence in its decision. *See Higginbotham v. Barnhart* 405 F.3d 332 (5th Cir. 2005); *Higginbotham v. Barnhart*, 163 Fed. Appx. 279, 2006 WL 166284 (5th Cir. 1/10/2006) ("*Higginbotham II*"). Rather, in appropriate cases, the courts may assign their own reasons for discounting the significance of evidence presented initially to

---

[6] The Appeals Council issued its rote denial: "we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 1-2).

the Appeals Council.[7]

Assuming that S.J.M.'s iLEAP results are new and pertinent to the relevant period, the court is not persuaded that they otherwise are material. The iLEAP results indicate that S.J.M. performed at an unsatisfactory level, and that in some areas, he achieved significantly lower results than the state average. Nevertheless, there is no accompanying evidence to demonstrate that his results were at least two standard deviations below the norm as required for a standardized test score to demonstrate a marked impairment. *See* 20 C.F.R. § 416.926a(e)(2).

In addition, plaintiff also submitted S.J.M.'s final report card for the 2012-2013 school year, along with his Grade 3 Promotion/Retention Worksheet. (Tr. 320-322). The Worksheet documented that S.J.M. obtained a C in Reading, a D in Math, a C in language arts, a B in social studies, and a C in science. (Tr. 322). Ms. Waller considered these grades, S.J.M.'s attendance, *and* his unsatisfactory results on the iLEAP test, but concluded that he had enough points to warrant promotion to the fourth grade. *Id*.

In sum, the Appeals Council's implicit determination that plaintiff's subsequent evidence did not undermine the basis for the ALJ's decision is supported by substantial evidence.

2) <u>Attending and Completing Tasks</u>

In the domain of attending and completing tasks, the regulations provide that

> [w]hen you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your

---

[7] In *Higginbotham II*, the panel discounted new evidence from claimant's treating physician as conclusory and unsupported. *Higginbotham, II, supra*. In *Garth v. Astrue*, the Fifth Circuit discounted the significance of new evidence from plaintiff's treating physician because it contradicted his own treatment notes and plaintiff's testimony. *Garth v. Astrue*, 393 F. App'x 196, 199 (5th Cir. Aug. 26, 2010).

> school materials, and complete classroom and homework assignments. You
> should be able to concentrate on details and not make careless mistakes in your
> work (beyond what would be expected in other children your age who do not have
> impairments). You should be able to change your activities or routines without
> distracting yourself or others, and stay on task and in place when appropriate. You
> should be able to sustain your attention well enough to participate in group sports,
> read by yourself, and complete family chores. You should also be able to complete
> a transition task (e.g., be ready for the school bus, change clothes after gym,
> change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(2)(iv).

The regulations also provide examples of limitations in this domain which do not necessarily rise to the level of a "marked" or "extreme" limitation:

> (i) You are easily startled, distracted, or overreactive to sounds, sights, movements, or touch.
>
> (ii) You are slow to focus on, or fail to complete activities of interest to you, e.g., games or art projects.
>
> (iii) You repeatedly become sidetracked from your activities or you frequently interrupt others.
>
> (iv) You are easily frustrated and give up on tasks, including ones you are capable of completing.
>
> (v) You require extra supervision to keep you engaged in an activity.

20 C.F.R. § 416.926a(b)(3).

In this case, the ALJ noted that, because of his ADHD, S.J.M. received accommodation in testing at school. (Tr. 19). Furthermore, S.J.M.'s third grade teacher had documented slight, obvious, serious, and very serious problems in the domain of attending and completing tasks. *Id*. Nonetheless, the ALJ emphasized Dr. Trejo's benign findings at S.J.M.'s regular office visits. *Id*. Indeed, as recently as June 14, 2012, and consistent with his other office visits, Dr. Trejo noted that S.J.M.'s mood was good, he was not irritable or restless, with normal energy, and experienced no difficulty concentrating. (Tr. 238). As a result, the ALJ found that S.J.M.

suffered a less than marked limitation in this domain.

Plaintiff argues that in lieu of Dr. Trejo's treatment records from May 2011- June 2012, the ALJ should have credited the attorney-provided ADHD medical statement completed by Dr. Trejo on October 22, 2012, in which he indicated that S.J.M. had marked, severe, or extreme limitations in all areas of functioning on the form. (Tr. 318-319). In her decision, however, the ALJ provided a laundry list of reasons for discounting the significance of Dr. Trejo's medical source statement, including that it was inconsistent with his own treatment records. (Tr. 17). While plaintiff posits that the medical source statement documented a deterioration of S.J.M.'s condition, the record is conspicuous for the lack of any contemporaneous treatment records from Dr. Trejo to support this theory. In fact, plaintiff admitted that Dr. Trejo seldom asked about S.J.M.'s activities at school. (Tr. 45-46). Rather, it was plaintiff who provided Dr. Trejo with information about S.J.M. *Id*.

Plaintiff also contends that a marked limitation of functioning necessarily follows from the questionnaire completed by S.J.M.'s teacher, Ms. Waller. However, out of 13 areas of inquiry, Ms. Waller indicated that S.J.M. had a "very serious" problem in but a single area, and "serious" problems in only three other areas. (Tr. 214). In each of the nine remaining areas, Ms. Waller rated S.J.M. as having a "slight" or no more than "obvious" problem. *Id*. The court reiterates that Ms. Waller remarked that S.J.M. had trouble staying on task and focused when he was *not* on his medication. (Tr. 217). In addition, plaintiff's mother conceded that S.J.M. did not act up when he was on his medication. (Tr. 54). Fortunately, S.J.M. did not have trouble

taking his medication on a regular basis. (Tr. 217, 54).[8]

In sum, the court finds that between Ms. Waller's questionnaire responses and Dr. Trejo's benign office visit notes, the record contains substantial evidence to support the ALJ's determination that S.J.M. suffered a less than marked limitation in the domain of attending and completing tasks.[9]

**Assignment of Error No. 4**

Plaintiff contends that the ALJ's credibility determination was conclusory and therefore, insufficient as a matter of law. When assessing credibility, the ALJ is required to consider the objective medical evidence, the claimant's statements, the claimant's daily activities, and other relevant evidence. *See* TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS (SSR 96-7p). The ALJ is also obliged to consider inconsistencies in the evidence and conflicts between the claimant's statements and the remainder of the evidence. *Id.*, *see also* 20 C.F.R. § 416.929(c)(4).

---

[8] Plaintiff argues that the Conners 3rd Edition - Teacher ("Conners 3-T") assessment documented the presence of "very elevated score[s]" in inattention, hyperactivity/impulsivity, and executive functioning. (Tr. 278-296). However, the assessment was administered in October 2011 – several months before the alleged onset of disability in this case. The assessment resulted in several accommodations for S.J.M. in the classroom setting – as the ALJ acknowledged in her decision. *See e.g.*, Tr. 272.

[9] Even if the record did not include substantial evidence to support a less than marked limitation in this domain, any error was harmless because virtually all of the evidence discussed by the ALJ in her discussion of the domain of "interacting and relating to others" compels a finding that any limitation in that domain was less than marked. *See* Tr. 20, 215. Furthermore, plaintiff does not argue that S.J.M. had marked limitations of functioning in the three remaining domains. The only domain that arguably could support a marked limitation of functioning is the domain of "caring for [one]self." Although S.J.M.'s teacher noted various coping problems when S.J.M. became frustrated or got into trouble (Tr. 216), these emotional deficits were offset by his ability to meet his physical needs. *See* Tr. 216, 22.

Nevertheless, the ALJ need not follow formalistic rules in her credibility assessment. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

In this case, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained below." (Tr. 17). The ALJ then proceeded to discuss the six domains of functioning and credited the observations of S.J.M.'s teacher and Dr. Trejo's benign treatment notes. In other words, the ALJ favored the assessments and effects of S.J.M.'s impairment as recognized by the educational and medical[10] professionals to the extent that they conflicted with plaintiff's description of S.J.M.'s limitations. The ALJ's discussion met the requirements of 20 C.F.R. § 416.929, and her resolution is supported by substantial evidence. *See Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (unpubl.) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3, 2008) (unpubl.) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing); *Hernandez v. Astrue*, 2008 WL 2037273 (5th Cir. May 13, 2008) (unpubl.) (despite claimant's subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion).

## Conclusion

For the above-assigned reasons, the undersigned finds that the ALJ's conclusion that

---

[10] As reflected in Dr. Trejo's treatment notes.

S.J.M. is not eligible for benefits because his impairment(s) does not meet, equal, or functionally equal any impairment in Appendix 1 to Subpart P of Social Security Administration Regulations No. 4 is supported by substantial evidence and is free of legal error. *Id.* Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 21st day of July 2015.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE